UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:23-cv-82-MOC-WCM

| | |
|---|---|
| **MICROTECH KNIVES, INC.,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **OUTDOORS ONLINE, LLC, et al.,** ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on Defendant Outdoors Online, LLC's Motion to Dismiss or, alternatively, to Transfer Venue, pursuant to FED. R. CIV. P. 12(b)(3), (Doc. No. 23).

## I. BACKGROUND AND FACTS

### A. The Parties

Plaintiff Microtech Knives, Inc. is a Pennsylvania corporation with its principal office in Mills River, North Carolina. (Compl. ¶ 1). Defendant Outdoors Online, LLC does business as Gunbroker.com (hereinafter "GunBroker" or "GunBroker.com"), and is a wholly owned subsidiary of AMMO, Inc., which has a principal place of business in Scottsdale, Arizona. (Doc. No. 24-1, Decl. of Chief Operating Officer Beth Cross ¶¶ 1, 3). AMMO's principal office, including the majority of the GunBroker.com management team and executive operations, is located in Arizona.

GunBroker's principal place of business is in Atlanta, Georgia. (Id. ¶ 3). GunBroker's operating procedures, policies, business practices, and contracts-outlining how it operates, serves

1

its clients, develops, and implements its business are located in Atlanta, Georgia and Scottsdale, Arizona. (Id. ¶ 4). GunBroker's servers are located in Arizona and Georgia. GunBroker.com has no corporate offices, employees, or property in North Carolina. (Id. ¶¶ 5–6). GunBroker.com does not specifically direct any of its activities or marketing to North Carolina buyers or sellers. (Id. ¶ 7). Around less than 3.7% of annual sales on GunBroker's website come from buyers in North Carolina. (Id. ¶ 9). When a sale takes place on the GunBroker.com website, the buyer agrees to the website's terms and conditions, which, among other things, provide that the laws of Georgia govern any disputes between the buyer and seller. (Id. ¶ 17). Defendant Janecek is a resident of Texas. (Compl. ¶ 3).

### B. Plaintiff's Allegations against Defendants

Plaintiff accuses Defendant GunBroker of selling on its website counterfeit clones of various knives made by Plaintiff and protected by trademarks. Plaintiff alleges that Defendant Janecek advertises for sale on the GunBroker website clones of Microtech knives bearing numerous different registered trademarks owned by Microtech. Plaintiff alleges that GunBroker is liable for infringing on its marks because "Defendant Outdoors Online, LLC knowingly allows Defendant Jon Janecek and others to advertise for sale on the website www.Gunbroker.com clones of Microtech knives bearing at least nineteen different registered trademarks owned by Microtech." (Compl. ¶ 9). Plaintiff brings claims against Defendants for infringement and counterfeiting 19 of Microtech's federally registered trademarks, in violation of 5 U.S.C. § 1114, and one common law trademark.

Defendant moves to dismiss for improper venue, or, in the alternative, to transfer venue to the Northern District of Georgia pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a). Defendant seeks, alternatively, dismissal based on lack of personal jurisdiction

and for failure to state a claim. Defendant has also filed a motion to compel arbitration, citing an arbitration clause in Defendant's terms of service. For the following reasons, the Court will transfer this action to the Northern District of Georgia.

## II. DISCUSSION

When a defendant objects to venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that venue is proper. See Colonna's Shipyard, Inc. v. City of Key West, 735 F. Supp. 2d 414, 416 (E.D. Va. 2010) (citing Bartholomew v. Va. Chiropractors Ass'n, 612 F.2d 812, 816 (4th Cir. 1979), overruled on other grounds by Union Labor Life Ins. Co. v. Pireno, 458 U.S. 119 (1982)). In the absence of an evidentiary hearing, to survive a Rule 12(b)(3) challenge, "the plaintiff need only make a prima facie showing of venue." Mitrano v. Hawes, 377 F.3d 402, 405 (4th Cir. 2004). In determining whether such a showing has been made, the Court must "view the facts in the light most favorable to the plaintiff." Aggarao v. MOL Ship Mgmt. Co., 675 F.3d 355, 366 (4th Cir. 2012).

Under the general venue statute, a civil action may be brought in--

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391. If venue is improper, the district court where the case was improperly filed shall dismiss, or if it is in the interest of justice, transfer the case to any district or division where it could have been properly brought. See 28 U.S.C. § 1406(a).

The parties do not dispute that Defendant is incorporated in and has a "regular and

3

established place of business" in Georgia. Here, a substantial part of the events giving rise to Plaintiff's claims (i.e., Defendant's alleged unlawful manufacturing, importing, advertising, and distributing) all occurred in Georgia. See 28 U.S.C. § 1391(b)(2) (explaining that venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred). Therefore, the Court finds that venue is proper in the Northern District of Georgia.[1]

Alternatively, the Court finds that, even if venue is proper in this district, a transfer of venue to the Northern District of Georgia is appropriate under 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." In deciding the forum to which a case should be transferred, a district court first determines whether the potential transferee forum is one in which the action could have been brought originally. The court then considers the factors relevant to the specific case, including the convenience of the parties and witnesses and the interests of justice generally. See Landers v. Dawson Constr. Plant, Ltd., 201 F.3d 436 (Table), 1999 WL 991419, at *2 (4th Cir. 1999) (unpublished) (citations omitted).

When considering whether to transfer venue under Section 1404(a), district courts should consider the following discretionary factors: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of

---

[1] Plaintiff argues that a substantial part of the events giving rise to the trademark infringement and counterfeiting claims occurred in North Carolina because "Microtech resides in this district, [and] Microtech's trademark rights are property that is the subject of this lawsuit and situated in this district." (Doc. No. 28 at 12). "In a venue analysis, however, where the plaintiff or the alleged trademark reside is not relevant." Valvoline Instant Oil Change Franchising, Inc. v. RFG Oil, Inc., No. 12-CV-39-KSF, 2012 WL 3613300, at *6 (E.D. Ky. Aug. 22, 2012) (citing Taylor & Francis Group, PLC v. McCue, 145 F. Supp. 2d 627, 629–30 (E.D. Pa. 2001)).

4

unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws. Plant Genetic Sys. N.V. v. Ciba Seeds, 933 F. Supp. 519, 527 (M.D.N.C. 1996).

     Here, transfer of this action is appropriate because the immediate action could have originally been brought in Georgia because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in Georgia, not in North Carolina. That is, although some North Carolina customers did allegedly order and receive the alleged counterfeit products, the products were marketed and shipped from Georgia. While the Court is mindful of the deference to Plaintiff's choice of forum, the Court finds that the eleven factors above weigh more heavily in favor of requiring the parties to litigate this action in Georgia.

     As for the residences of the parties, while Plaintiff is a resident of North Carolina, Defendant GunBroker is located in Georgia and Defendant Janecek resides in Texas. Notably, Defendant Janecek has agreed to litigate these claims in Georgia, where his costs to travel out of state would be minimized. As such, this factor weighs in favor of transfer.

     Next, as for ease of access of proof, Plaintiff's claims against GunBroker focus on its website. As such, information pertaining to its operation in Defendant's possession may be highly relevant to this claim. Information, records regarding business practices, policies, and procedures (the majority of which include electronically stored information on servers and/or

5

databases located in Atlanta, Georgia), and key witnesses including officers, directors, and employees relevant to this case are located in Georgia. These persons, information, and records would be much more accessible if this case were transferred to Georgia.

As for the availability of compulsory process for attendance of witnesses, Defendant contends that GunBroker's personnel, including its officers, managers, and website technicians, will likely be expected to testify during this case. Further, there may be important non-party witnesses in Atlanta who cannot be compelled to attend in North Carolina. This Court finds that, for Atlanta-area residents called as witnesses, as well as those located in Texas and elsewhere, traveling to western North Carolina to testify would be inconvenient and costly in terms of flights, hotel accommodations, and time away from work. Accordingly, this factor weighs in favor of transfer.

As for the possibility of a view of Defendant's premises, this appears to be a neutral factor.

As for the enforceability of a judgment, Defendants asserts that they do not own any property or accounts in North Carolina. Therefore, Georgia courts would be required to enforce any judgment Plaintiff obtains. As such, this factor weighs in favor of transfer.

As for other practical problems that make a trial easy, expeditious, and inexpensive, the Court agrees with Defendant that trial in Georgia would require less total expense and would be more expeditious, since key witnesses and documents are in Georgia. Furthermore, Atlanta is an international transportation hub and inexpensive, direct flights are available to all litigants, as well as numerous, affordable accommodations. This factor weighs in favor of transfer.

As for court congestion, Defendant notes that the Northern District of Georgia sees more civil cases filed (558 civil cases for period March 2022-2023) then the Western District of North

6

Carolina (241 civil cases for same period). However, the median time for disposing of the Northern District of Georgia's civil caseload is remarkably shorter.[2] Defendant notes that, over the past five years, the median time from filing to disposition for a civil case in the Northern District of Georgia averaged 6.9 months; whereas, the median time from filing to disposition for a civil case in the Western District of North Carolina averaged just over 9 months. The Court finds that this prong is neutral or tips only slightly against a transfer.

As for the interest of having localized controversies settled at home, the avoidance of unnecessary problems with conflict of law, and the advantages and obstacles to a fair trial, Defendant argues that because the agreed upon Terms and Conditions on the Gunbroker.com website states that Georgia law governs any disputes between buyers and sellers. Defendant argues that it would be unfair to Defendant if a trial proceeds in North Carolina because the Georgia courts are better equipped to apply Georgia law. The Court notes that the parties disagree over whether Plaintiff is bound by the terms of service on the Gunbroker.com website. Plaintiff argues that because it was not a buyer and of the alleged counterfeited goods, Plaintiff is not bound by the website's terms and conditions related to governing law. While this Court makes no ruling on that issue, if indeed Georgia law does govern the claims here, then a Georgia court will be in a better position to apply Georgia law to Plaintiff's claims. Thus, these factors weigh in favor of transfer.

Finally, and significantly, the Court is concerned about personal jurisdiction challenges if the Court were to retain this action in this district. A cursory review of the parties' jurisdictional arguments leads this Court to conclude that the personal jurisdiction issue is close. If the Court

---

[2] See https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0331.2023.pdf.

were to dismiss the case against Defendant for lack of personal jurisdiction, Plaintiff would be forced to refile in a district that could assert personal jurisdiction over Defendant, leading to more costs and burdens to both parties. Certainly, assertion of personal jurisdiction will be more likely to be upheld in Georgia, where Defendant GunBroker operates.

In sum, the Court finds that, considering all of the above factors, transferring this action to Georgia is appropriate under Section 1404(a). This matter will be transferred to the Northern District of Georgia.

### III. CONCLUSION

For the reasons stated herein, this matter is transferred to the Northern District of Georgia.

**IT IS, THEREFORE, ORDERED** that:

(1) Defendant's Motion to Dismiss or Transfer Venue, (Doc. No. 23), is **GRANTED** to the extent that this matter is transferred to the Northern District of Georgia.

(2) Upon transfer of this action to the Northern District of Georgia, the Clerk shall terminate all pending motions before this Court. In other words, the Northern District of Georgia shall determine the pending motions to dismiss for failure to state a claim and the pending motion to compel arbitration.

Signed: September 26, 2023

Max O. Cogburn Jr.
United States District Judge